## BOSTON EXCELSIOR CO. v. SWEATT.

(Circuit Court of Appeals, First Circuit. January 27, 1916.)

No. 1114.

1. MASTER AND SERVANT ☜278—ACTIONS FOR INJURIES—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

An employé, operating an excelsior baling press, consisting in part of a plunger, moving horizontally forward and back across a pit, and a treader, coming down into the pit from above, was killed by the treader knocking him into the pit in front of the plunger. It was part of his duty to bend over the pit, and put a header into the pit, as the plunger drew back, when the pit was filled with excelsior, and when he went to work he was instructed, before doing this, to shut off the flow of excelsior and move a lever, throwing the treader out of operation. There were no eye-witnesses to the accident, and the excelsior was found shut off, but the treader was in operating position. There was evidence that the treader would sometimes operate when the lever was in the stop position, and throw the lever into the operating position; that this was known to the agent whom the employer directed to instruct the employé as to the manner of doing the work; that it was abnormal and dangerous for the treader to so operate, and that it would not do so if the machine was in proper repair; and that the employé had always been seen by the employer and his associates doing his work as instructed. *Held*, that the jury were warranted in finding that the machine was out of repair; that the employer knew this, or from the length of time that it had existed, ought to have known of it, and put it into proper condition; and that it was negligent in failing to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☜278.]

2. MASTER AND SERVANT ☜276—ACTIONS FOR INJURIES—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

A finding was warranted that the employé followed the instructions and stopped the operation of the treader, and that the machine was afterwards put into operation through its being out of repair, especially in view of the fact that he must have known that it would be extremely hazardous, if not impossible, for him to put in the header when the treader was operating.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. ☜276.]

3. MASTER AND SERVANT ☜265—ACTIONS FOR INJURIES—BURDEN OF PROOF.

It was not incumbent upon the employé's administratrix, in an action for death, to show what particular defect in the machine caused it to operate in the abnormal and dangerous way mentioned; the fact that it did so operate itself disclosing that the machine was in some particular defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. ☜265.]

4. MASTER AND SERVANT ☜285—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for the death of an employé, operating an excelsior baling press and killed when a treader, the lever operating which had been placed in a stop position, was in some way thrown into operating position, evidence *held* to make questions for the jury as to whether the accident was caused by the worn condition of certain parts of the machine, which allowed them to come in contact with an upright controlling the operation of the treader.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. ☜285.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT &#8667;270—ACTIONS FOR INJURIES—ADMISSIBILITY OF EVIDENCE.

    In an action for the death of an employé, operating an excelsior baling press and knocked into a pit in front of a plunger by a treader, there was evidence that when he went to work he was instructed to move the lever controlling the operation of the treader to a stop position before leaning over the pit, and that his employer and associates had always seen him do the work in this way. The treader was found in operating position after the accident, but there was evidence that defects in the machine might have caused this. *Held*, that the testimony as to how he operated the machine was competent, whether or not testimony of habit is admissible, to show the method of work pursued at the time of an accident, as such evidence simply tended to show that in doing his work he understood what his instructions were and followed them, and it was a perfectly reasonable inference for the jury to make that he probably followed such instructions on the occasion in question.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. &#8667;270.]

6. MASTER AND SERVANT &#8667;270—ACTIONS FOR INJURIES—ADMISSIBILITY OF EVIDENCE.

    In an action for the death of an employé, claimed to have been caused by the machine he was operating being thrown into operating position because of defects in the machine, the court admitted evidence as to occasions shortly before he commenced work on the machine and shortly after the accident, when the operation of the machine was started in this way, as well as evidence regarding the wear on a part of the machine claimed to have thrown the machine into operation. *Held*, that an objection to this evidence on the ground of remoteness raised a question for the trial court, and presented no error of law.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. &#8667;270.]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by Abbie E. Sweatt, administratrix, against the Boston Excelsior Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Edward K. Woodworth, of Concord, N. H. (Streeter, Demond, Woodworth & Sulloway and Jonathan Piper, all of Concord, N. H., on the brief), for plaintiff in error.

De Witt C. Howe, of Concord, N. H. (Thomas F. Clifford, of Franklin, N. H., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This action is brought by Abbie E. Sweatt, administratrix of the estate of Roy H. Sweatt, against the Boston Excelsior Company, under the Employers' Liability Statute of New Hampshire (Laws 1911, c. 163), to recover damages for the death of Roy H. Sweatt, which occurred on December 24, 1913, while he was in the defendant's employ. There was a trial by jury, and a verdict for the plaintiff.

The case is here on the defendant's bill of exceptions, and the errors assigned are the refusal of the court to direct a verdict for the

---

defendant at the close of all the evidence, to give certain requested instructions, and in the admission of certain evidence.

The statute under which the action is brought does away with the defenses of assumed risk and negligence of fellow servants, and places the burden of proving contributory negligence upon the defendant.

The plaintiff's intestate, at the time he met his death, was at work upon a machine for baling excelsior, and had been engaged in this work for about 2 months. He was 26 years of age, a man of good habits, intelligent, and thoroughly acquainted with the work he was required to do.

The press was operated by steam power. Connected with and forming a part of the press was a plunger, which moved periodically forward and back across a pit into which the excelsior was fed and pressed the excelsior into bales. The plunger was always in motion and not subject to the operative's control. There was a treader which was so constructed and arranged as to come down into the pit and tread the excelsior. The operation of the treader was supposed to be controlled by a lever, in such a way that if the operative set the lever in the stop position the treader would not come down.

Sweatt's work, in operating the machine, consisted in pulling a rope which let the excelsior down from above into the pit, then in moving the lever to the left or operating position, whereby the upright that operated the treader would be brought in contact with the head of the plunger rod, on its upward movement on the gear that operated the plunger, and thus throw the treader into operation. After the pit was filled with excelsior, it was his duty to pull the rope to shut off the excelsior from above, move the lever to the right to put the treader out of operation, then take a header in his right hand, and, standing on a step with his body bent over the pit, reach with the header into the pit, and, as the plunger drew back to the proper position, insert the header.

Sweatt was killed while putting the header into the press in the regular course of his work, by reason of the treader coming down and knocking him into the pit and subjecting him to the operation of the plunger. There was no eyewitness to the accident. Just before the accident he was seen by his brother, and the lever was then in the operating position, with the treader working the excelsior into the pit. Immediately after the accident occurred, Sweatt was found in the pit, the treader had been working, and the lever was in the operating position.

As the lever, when seen before and immediately after the accident, was in the operating position, the defendant insists in its motion for a directed verdict that there was no evidence from which the jury could find (1) that the defendant was negligent, or (2) that its negligence was the cause of Sweatt's death.

[1, 2] There was evidence that when Sweatt went to work for the defendant he was instructed that, before putting in the header, he should shut off the excelsior and move the lever to the stop position, then reach down into the pit and put in the header; that he was not only instructed to do this, but his employer and associates had always

seen him do the work in this way. At the time of the accident the excelsior had been shut off, so that it could not come down. There was evidence that the treader would at times operate when the lever was in the stop position and throw the lever into the operating position. It had done this at times prior to Sweatt's death, and on one occasion it occurred some three or four weeks before Sweatt went to work for the defendant, and this fact was known to the agent, whom the defendant directed to instruct Sweatt as to the manner of doing his work. It was an abnormal and dangerous thing for the treader to operate in this way, and the testimony was that it would not do so if the machine was in a proper state of repair.

From this evidence we think the jury might properly have found that the machine was out of repair; that the defendant knew that this was so, or, from the length of time that it had existed, ought to have known of it, and put it into proper condition; and that it was negligent in failing to do so. The testimony showing that Sweatt was instructed to do his work in a particular way, and had always been known to follow the instructions, was sufficient to warrant the conclusion that at the time of the accident he followed the instructions and moved the lever to the stop position before attempting to put in the header, and that the machine was afterwards put into operation through its being out of repair. Especially is this true when it is taken into account that he had shut off the excelsior before putting in the header, and that he must have known that it would be an extremely hazardous, if not an impossible, thing for him to put in the header when the treader was operating.

[3] The defendant's request for instructions embodied in its third assignment of error was properly refused. It was not incumbent upon the plaintiff to show what the particular defect in the machine was that caused it to operate in this abnormal and dangerous way. The fact that it did so operate disclosed of itself that the machine was in some particular defective, and the testimony of the plaintiff's expert confirmed the proposition.

[4] The defendant's sixth and seventh assignments of error are based on the refusal of the court to instruct the jury that there was no evidence from which it could find that the defendant was negligent in respect to the condition that existed around the hub of the twin gears, or that the alleged wear around the hub could have caused the accident. The evidence was that the upright which operated the treader came down in the space between the twin gears, and that the distance from each gear to the upright was three-fourths of an inch, that the gears were 40 inches in diameter and revolved on a shaft, and that the hole in the gears through which the shaft passed had become so worn and enlarged as to allow a radial sway of the gears of about 3 inches; that the upright, when thrown out by the arm of the lever, would be in the vicinity of the teeth of the gears, so that, if the gears wabbled an inch or more, the teeth could catch the bottom of the upright and throw the treader into operation. The construction of the machine was such that the upper portion of the upright passed through a confined space in the frame of the machine, which tended,

as the upright was pushed up, to throw it into its normal or operating position and against the arm of the lever, which would have the tendency to throw the lever from the stop to the operating position. In this state of the proof, it was clearly open to the jury to say whether the accident did or did not come about because of this defect in the gears. The court was justified in refusing the requested instructions.

The fourth and fifth assignments of error raise the same questions as to the condition around the pin connecting the head of the plunger rod to the twin gears as was raised by the sixth and seventh assignments of error concerning the wear about the hub of the twin gears. As to these requests, the defendant's contention is that there was no evidence from which it could be found that, when the upright was out of position, the head of the plunger arm could hit it, so as to put the treader in operation. The evidence was that the distance from the upright, when out of position, to the head of the plunger arm on its upward movement on the gear, when in a proper state of repair, was an inch and a half; that at the time of the accident the hole in the head of the plunger arm, through which the pin on the gears worked, was worn; that the machine had been long in use, and at times operated abnormally; and that, a few months after the accident, the hole in the head of the plunger arm was found to have extended in the direction of the plunger 2 inches or more beyond the circumference of the original hole. The defendant contends, however, that, even if the hole in the plunger arm could be found to have been in this worn condition, the head of the plunger arm could not come in contact with the upright, when out of position, so as to set the treader in operation, as the plunger head, on approaching and passing the bottom of the upright, was being drawn, and, if drawn, the worn portion of the hole towards the plunger could not be availed of to permit the plunger head to hit the upright. On the other hand, it is suggested that the wear in the hole of the plunger head might permit it to be thrust forward, so as to come in contact with the upright, and that this might occur if the plunger stuck on the initial pull; and, while it may not be as probable that the upright was put in operation from this source as from the worn condition of the gears about the hub, we do not think that the court erred in refusing to give these requests or that the defendant was prejudiced thereby.

The eighth assignment of error is covered in our discussion of the sixth and seventh assignments, and needs no further consideration.

[5] The ninth, tenth, and eleventh assignments of error relate to the admission of testimony as to how Sweatt operated the machine. This testimony was objected to on the ground that the method pursued by Sweatt, at the time of the accident, could not be found from evidence showing what his habit was in doing the work. But, whether habit testimony to show such a fact is competent or incompetent, we do not think that the testimony in this case comes under that head. The case discloses that the defendant instructed Sweatt as to the manner of doing his work, and the evidence here objected to simply tends to show that in doing his work he understood what his instructions were and followed them, and it was a perfectly reasonable inference

for the jury to make that if he had been instructed as to how he should do his work, and understood his instructions, he probably followed them on the occasion in question.

[6] The twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, and twenty-second assignments of error relate to the admission of testimony showing that the treader would work when the lever was thrown into the stop position, and that the lever at times would be thrown back into operating position. The evidence was that such occurrences took place a short time before Sweatt began his work on the machine and shortly after the accident. The principal objection to the testimony was that it was too remote. The question of remoteness, however, was one for the trial court and presents no error. Another objection raised was that the court erred in admitting the testimony "because there was no evidence that a defect in the press causing the feeder board to operate while the lever was in a position to stop it could have caused the accident." We have already shown that the treader might be put in operation by the upright coming in contact with the gears when the lever was in the stop position, and that the lever would remain in the stop position, or be thrown into the operating position, depending upon whether the upright, on being thrown up, was made to push sufficiently hard against the arm of the lever.

The twentieth and twenty-first assignments of error relate to the reception of certain evidence pertaining to the wear about the hole in the head of the plunger arm. The chief objection seems to be that it was too remote. But this objection presents no error of law. The evidence tended to show what the condition of the machine was at the time of the accident, and it was clearly admissible for this purpose.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers her costs of appeal.